The **FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for Vernon Savings and Loan Association, Plaintiff,**

v.

**HOMES INTERNATIONAL DEVELOPMENT CORPORATION, et al., Defendants.**

**TWIN CONSTRUCTION, INC., Plaintiff,**

v.

**BOCA RATON, INC., et al., Defendants.**

**Nos. 87–8912–CIV, 87–8913–CIV.**

United States District Court,
S.D. Florida.

Sept. 7, 1989.

---

See also 676 F.Supp. 247.

Kyle Silverman, West Palm Beach, Fla., for Twin.

Gary Woodfield, Palm Beach, Fla., for FSLIC.

### MEMORANDUM DECISION

SCOTT, District Judge.

These consolidated cases were filed in the wake of yet another failed savings and loan institution. In the first action, the Federal Savings and Loan Insurance Corporation ("FSLIC"), as receiver for Vernon Savings and Loan Association ("Vernon"), seeks to foreclose a mortgage securing a promissory note for $8.9 million. In the second action, Twin Construction, Inc. ("Twin") seeks to foreclose a mechanics lien for $1.5 million on the same property. Each seeks priority of payment.

FSLIC has moved for summary judgment in both cases, claiming that, as a matter of law, Twin is estopped from disputing FSLIC's priority under the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941),

and its progeny. Twin does not contest FSLIC's statement of the facts in any material respect, but instead contends that *D'Oench, Duhme* does not apply to bar its claim.[1] With the issue joined, the Court will first review the background of the litigation before turning to the legal issue presented.

## I. BACKGROUND

On May 30, 1985, Twin Construction, Inc. ("Twin") entered into a construction contract with the Habitat, the Shopping Mall ("Owner") to build a shopping center on certain real property known as Village Point in Boca Raton, Florida. Twin expressly agreed under the contract that any lien it might subsequently assert would be subordinate to a mortgage lien by the lender of funds for the project.

Vernon Savings and Loan Association ("Vernon") agreed to provide funding for the development of the project on July 24, 1985. In return, the Owner executed and delivered a promissory note for $8.9 million, secured by a mortgage on Village Point. Vernon recorded the mortgage the following day in Palm Beach County, Florida. Vernon also requested that Twin consent to an assignment from the Owner to Vernon of the Owner's rights under the construction contract. Twin executed a Contractor's Consent form on July 24, 1985, contemporaneous with the note. The form, prepared by Vernon, again recited Vernon's mortgage priority, but Twin inserted a clause providing that Vernon would reserve sufficient funds in the loan agreement account to satisfy the construction contract, and that all payments would be made by joint check to the Owner and Twin. Twin returned the consent form to Vernon, but Vernon's signature does not appear on the form.

In February 1986, the Owner advised Twin that it was unable to pay the balance due under the contract. Twin alleges that it continued work under the contract be-

cause of oral representations by Vernon that additional payment would be forthcoming from the loan proceeds. When the Owner still failed to pay for work performed, Twin filed a claim of lien on March 4, 1986, on the Village Point project, for approximately $1.5 million.

On November 19, 1987, Vernon was declared insolvent by the Federal Home Loan Bank Board, and FSLIC was appointed sole receiver to liquidate Vernon's assets for the benefit of creditors. Thus, FSLIC now holds Vernon's note and mortgage on Village Point. FSLIC filed suit to foreclose the mortgage, and intervened in Twin's pending action for mechanics lien foreclosure.

## II. DISCUSSION

FSLIC's motion for summary judgment asserts the priority of its lien under the note and construction contract, and contends that, as a matter of law, Twin is estopped to interpose any other alleged agreement as grounds for priority. The motion is grounded in the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941), and its progeny, which has been universally accepted by the federal courts, and received recent endorsement from the Supreme Court in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

Under the doctrine of *D'Oench, Duhme,* a party is estopped from contesting the enforceability of a note held by FSLIC as receiver for a failed savings and loan institution, on the basis of any alleged oral agreement with officers of the failed institution. The doctrine is designed to protect FSLIC in its efforts to liquidate assets in receivership for the benefit of creditors. As explained by a sister court,

> The *D'Oench, Duhme* doctrine is a principle of federal common law in which the Supreme Court formed a federal policy to protect the FDIC and the public funds it administers against misrepresentation

---

1. During oral arguments, FSLIC and Twin agreed that the summary judgment motion presents a purely legal issue that is ripe for decision. Twin had earlier taken the position in its responsive memorandum that questions of fact remained and that summary judgment would therefore be improper. We have relied on Twin's later statement in open court.

as to the securities or other assets in the portfolios of the bank it insures.

*FSLIC v. Two Rivers Associates*, Order Granting Plaintiffs' Motions, Case No. 86–8571–CIV–DAVIS, slip op. at 5 (S.D.Fla. June 8, 1988) (Davis, J.), *aff'd*, 880 F.2d 1267 (11th Cir.1989).

■ To preclude application of the doctrine in these cases, Twin has asserted a series of arguments that it contends distinguish this case from contrary decisions in which FSLIC or FDIC has prevailed under *D'Oench*. Most of these arguments can be summarily rejected. First, Twin claims that it did not participate in a deceptive or fraudulent scheme, and that therefore, *D'Oench, Duhme* should not apply to bar its claim. However, that argument misapprehends the doctrine. *D'Oench, Duhme* is designed to ensure that FSLIC examiners will be able to assess the strength of an institution from its records, without the spectre of oral agreements impeding the necessary speed of action. Thus, a deceptive scheme is not required under the doctrine. Rather, the doctrine applies to any arrangement in which FSLIC "was likely to be misled." *Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 361 (5th Cir.1981).

■ Next, Twin contends that FSLIC cannot rely on the doctrine because it had actual knowledge of the alleged oral agreement with Vernon. It is true that Twin had already filed its foreclosure action when FSLIC was appointed receiver. However, the Supreme Court has held that knowledge on the part of FSLIC is simply irrelevant. *See Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). Any other rule would be unworkable. FSLIC should not be required to consider the possibility of an oral agreement when assessing the strength of a savings and loan institution, merely because an interested third party has alleged that such an agreement exists, especially in view of the speed of action required in making receivership decisions. *See Two Rivers*, at 1275.

■ Twin further argues that because it is not the maker of the note held by FSLIC, any agreement between Twin and Vernon is not subject to *D'Oench*. On this point, the Court agrees with FSLIC that "Twin's interpretation is untenably narrow and undercuts the very foundation upon which *D'Oench* was premised." Reply Memorandum at 2. *D'Oench* applies to any agreement interposed as a claim or defense to enforcement of an asset held by FSLIC. The doctrine is "all encompassing," and it applies to any agreement that "tends to defeat or diminish [FSLIC's] rights in an asset" in receivership. *FDIC v. Hoover–Morris Enterprises*, 642 F.2d 785, 787 (5th Cir.1981) (interpreting 12 U.S.C. § 1823(e), which codified the doctrine in the FDIC context).

Finally, Twin contends that *D'Oench, Duhme* does not apply because the alleged agreement is not oral, but written, in the form of the Contractor's Consent form. If Twin is to prevail on this argument, however, it must do so on the written document standing alone. To consider any parol evidence in support of Twin's construction of the document would be to vitiate the rule. For the same reason, the Court will not consider Twin's allegations of oral representations by Vernon that payment would be forthcoming from the loan proceeds.

This final argument advanced by Twin was recently considered by the Eleventh Circuit. *See FSLIC v. Two Rivers Associates, Inc.*, 880 F.2d 1267 (11th Cir.1989).[2] In *Two Rivers*, the Eleventh Circuit rejected the defendant Robert Smith's contention that *D'Oench* did not apply because written evidence of a collateral agreement existed. On strikingly similar facts, the Court held:

> At no point in the many different documents evidencing the loans at issue is there an explicit acceptance of the obligation to fund the entire project. This

---

**2.** Twin relies on *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981), but that case is inapposite. As the Eleventh Circuit noted: "This is not a case like *Howell* where the leases on which the suit was based 'clearly manifest[ed] the bilateral nature of the lessee's and lessor's rights and obligations.'" *Two Rivers*, at 1275 (quoting *Howell*, 655 F.2d at 747) (brackets in original).

one ambiguous reference to a further construction loan is not sufficient to allow Smith to advance defenses against the FSLIC about an agreement to fund the entire project.

*Id.*, at 1276.

Similarly, in the FDIC context, the court in *RSR Properties, Inc. v. FDIC*, 706 F.Supp. 524, 533 (W.D.Tex.1989), held that, "[t]o be enforceable, a contract must be certain enough to 'define the nature and extent of the parties' obligations' without resort to parol evidence ... [because] there can be no binding contract between the parties if essential terms are left open for future negotiations between them."

■ We recognize that *RSR Properties* was decided under a statutory scheme that imposes strict conditions for enforcing a collateral document that contradicts the note held by FDIC. However, in our view, the policy concerns underlying the *D'Oench* decision apply equally to FSLIC and FDIC. Indeed, the principle espoused in *RSR Properties* was the basis of the Eleventh Circuit's decision in *Two Rivers*. Thus, while we need not consider to what extent the statutory requirements in FDIC cases apply to FSLIC cases, we hold that a collateral agreement must be fully integrated and capable of definition without resort to parol evidence in order to defeat FSLIC's right of recovery.

■ Applying this principle to the Contractor's Consent form, it is apparent that Twin's final argument must also fail. The Contractor's Consent form was executed by Twin, but not Vernon. Thus, Twin would still need to offer proof of acceptance by Vernon of the additional term inserted by Twin. Moreover, even reading the document in the light most favorable to Twin, an ambiguity remains. At best, the document is internally inconsistent. First, the document recognizes in express terms Vernon's right of priority, but the added term then obligates Vernon to hold funds for payment to the contractor. Even if this latter term supports Twin's argument of priority, it conflicts with the term recognizing Vernon's priority.

In view of these inconsistencies and inadequacies, there can be no serious question that the alleged arrangement between Vernon and Twin would be likely to mislead FSLIC in assessing Vernon's strength based on its records. This is the prospect that *D'Oench, Duhme* was designed to avoid. Accordingly, Twin's attempt to displace FSLIC's priority must fail.

## III. CONCLUSION

The Court concludes that FSLIC is entitled to priority as a matter of law under the *D'Oench* doctrine. Accordingly, Twin's efforts to subordinate FSLIC's priority must fail. FSLIC and Twin agreed at oral arguments that resolution of this issue in favor of FSLIC would leave no further issues or parties before the Court in these consolidated cases. Accordingly, it is hereby ORDERED as follows:

1. FSLIC's Motion for Summary Judgment in both consolidated cases is GRANTED.

2. FSLIC shall have ten (10) calendar days to submit a final judgment for both cases.

DONE and ORDERED.