RESOLUTION TRUST CORPORATION, Plaintiff,

v.

Robert E. HECHT, et al., Defendants.

Civ. A. No. R–92–371.

United States District Court, D. Maryland.

July 27, 1992.

---

Robert P. Trout, Leslie Lickstein, and Christopher A. Myers, Dunnells, Duvall, Bennett & Porter, Washington, DC, for plaintiff.

Alison D. Kohler, Phillips P. O'Shaughnessy, and John E. Sandbower, III, Sandbower, Gabler & O'Shaughnessy, Baltimore, MD, for defendant Robert E. Hecht, Sr., pro se.

Pearl Brackett, Baltimore, MD, pro se.

Richard E. Dunne, III, and George Beall, Hogan and Hartson, Baltimore, MD, William J. Bowman, Hogan and Hartson, Washington, DC, and John B. Howard, Jr., Hogan and Hartson, Baltimore, MD, for defendants, Thomas F. Mullan, Jr., and Gerald J. Strautberg.

Melvin J. Sykes, Baltimore, MD, for defendant Melvin Pugatch.

Robert E. Cahill, Sr., and Stephen M. Schenning, Nolan, Plumhoff and Williams, Baltimore, MD, for defendant Thomas J. Reynolds.

John H. Doud, III, Fedder and Garten, Baltimore, MD, for defendant, Ward R. Woods.

Robert P. Trout, Leslie Lickstein, and Christopher A. Myers, Dunnells, Duvall, Bennett & Porter, Washington, DC, for counter-defendant, Resolution Trust Corp.

## MEMORANDUM AND ORDER

RAMSEY, Senior District Judge.

Pending before the Court in the above-captioned case are several motions, all of which are now ripe for consideration. On July 23, 1992, the Court conducted a hearing on the following pending motions: (1) defendants Thomas F. Mullan, Jr. and Gerald J. Stautberg's motion to dismiss the complaint or for summary judgment or in the alternative to certify the question of statute of limitations to the Maryland Court of Appeals; (2) the Resolution Trust Corporation's motion to strike affirmative defenses; (3) defendants Mullan and Stautberg's motion to dismiss plaintiff's claims for negligence and breach of fiduciary duty; (4) defendants Ward R. Woods and John F. Ireton's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6); and (5) defendant James L. Fisher's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). After considering the submissions of the parties and the arguments of counsel, the Court is now prepared to rule.

## I. *FACTUAL BACKGROUND*

Plaintiff Resolution Trust Corporation ("RTC") instituted this action on February 7, 1992 against ten former officers and directors[1] of Baltimore Federal Financial ("Baltimore Federal"), a federally chartered and insured savings and loan institution. RTC is a federal corporation created by the

Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183, to manage failed savings and loan institutions under the direction of the Federal Deposit Insurance Corporation ("FDIC"). RTC asserts its claims against the defendants in its corporate capacity as the assignee of the rights of Baltimore Federal.[2]

In the complaint, RTC alleges that between November, 1983 and July, 1985, the defendants approved six loans to complicated, highly speculative commercial real estate and construction ventures that ultimately resulted in losses to Baltimore Federal that could exceed $32,000,000. Plaintiff charges that the board of directors and senior management of Baltimore Federal seriously imperiled the institution's loan portfolio through unsafe, imprudent, and reckless business practices.[3] For each of the six loans at issue, the complaint contains four claims: breach of fiduciary duty, negligence, gross negligence, and breach of contract. RTC did not allege that any of the defendants engaged in any form of self-dealing or fraudulent conduct. In their answers, three of the defendants pled the affirmative defenses of contributory negligence, laches, estoppel, and lack of proximate cause.

At all relevant times to this litigation, FHLBB had the power to examine, supervise, and regulate Baltimore Federal. The complaint alleges that in 1985, FHLBB severely criticized the institution's commercial lending practices. As a result of its unsound lending program and the severe accounting and underwriting problems identified in 1985,

---

1. Defendants Gerald J. Stautberg, Thomas F. Mullan, Jr., Pearl C. Brackett, Leonard W. Dayton, James L. Fisher, John F. Ireton, Melvin T. Pugatch, and Ward R. Woods were directors of Baltimore Federal. Defendant Robert E. Hecht, Sr. served as both an officer and director. Defendant Thomas J. Reynolds was an officer of Baltimore Federal. Exhibit A to defendant's Mullan and Stautberg's motion to dismiss or for summary judgment lists the tenure of each director of Baltimore Federal between 1983 and 1989. Exhibit B of that motion specifies the amount of each of the six improper loans involved in this action, the closing date of each loan, the loss alleged, the corresponding counts in the complaint, and the defendants named.

2. The Federal Savings and Loan Insurance Company ("FSLIC") was named conservator of Baltimore Federal on February 7, 1989. Upon the enactment of FIRREA on August 9, 1989, RTC succeeded FSLIC as conservator of Baltimore Federal. In April, 1990, RTC assumed the role of receiver.

3. RTC alleged, *inter alia*, that the defendants relied on inexperienced loan officers, failed to obtain adequate appraisals, feasibility studies, and financial analyses, approved loans outside Baltimore Federal's traditional lending area, and improperly evaluated the security provided for the loans.

FHLBB required Baltimore Federal to enter into a supervisory agreement on July 2, 1986. A year and a half later, on February 8, 1988, Baltimore Federal entered into a consent agreement with FHLBB which strictly limited the institution's commercial real estate and construction lending. On February 7, 1989, FHLBB placed Baltimore Federal in conservatorship, and appointed FSLIC as conservator. After the enactment of FIR-REA, RTC replaced FSLIC as conservator. On February 6, 1992, RTC filed the instant action.

## II. *LEGAL STANDARDS*

### A. *Motion to Dismiss*

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the bare legal sufficiency of a complaint. In deciding the motion, the Court must take all well-pleaded allegations of the complaint as true, and must draw all inferences in favor of the plaintiff. *See Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456 (4th Cir.1983), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1640, 90 L.Ed.2d 185 (1986). After viewing the complaint in this light, the Court may not grant a motion to dismiss "unless it appears *to a certainty* that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the] claim." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324 (4th Cir.1989) (emphasis added); *see also Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. *Motion for Summary Judgment*

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which there is no genuine dispute as to any fact which could possibly affect the outcome of the case. *Bland v. Norfolk & Southern R.R. Co.,* 406 F.2d 863, 866 (4th Cir.1969). The applicable standards for analyzing a motion for summary judgment under Rule 56 are well established. The party seeking sum-

mary judgment bears the initial burden of showing the absence of any genuine issue of material fact, and that he is entitled to judgment as a matter of law. In determining whether the defendant has sustained this burden, the trial judge must consider "not whether he thinks the evidence unmistakably favors one side or the other but whether a "fair-minded jury could return a verdict for the [party opposing the motion] ..." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pulliam Invest. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court stated that

> Rule 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine dispute as to any material fact," since a complete failure of proof as to an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322–23, 106 S.Ct. at 2552–53.

## III. *MOTION OF DEFENDANTS MULLAN AND STAUTBERG TO DISMISS THE COMPLAINT OR FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO CERTIFY THE QUESTION OF STATUTE OF LIMITATIONS TO THE MARYLAND COURT OF APPEALS*

■ Defendants Mullan and Stautberg assert that the statute of limitations bars all claims against them.[4] They argue that the three year limitations period applicable to all of RTC's claims expired before FSLIC was appointed conservator and assumed control of the institution's assets on February 7, 1989. Under this argument, FSLIC could not have received by assignment any viable claims because all claims arising from the six

---

4. Defendants Ward R. Woods and John F. Ireton join in this motion.

loans at issue were time barred. Consequently, defendants argue that FSLIC could not have transferred any viable claims to RTC when RTC replaced FSLIC as conservator. All of RTC's claims against defendants must, they assert, be dismissed on statute of limitations grounds.

■ In an action brought by a federal entity for claims it received by assignment, a court must conduct a two part inquiry to determine whether the claims are barred by the statute of limitations. *See, e.g., FDIC v. Thayer Ins. Agency, Inc.,* 780 F.Supp. 745, 747 (D.Kan.1991). First, the court must determine whether the causes of action were barred by the applicable state statute of limitations before the federal agency acquired the institution's assets. *See, e.g., FDIC v. Bachman,* 894 F.2d 1233, 1236 (10th Cir. 1990). If the limitations period did not expire before the assignment, the court must then determine if the federal entity filed suit within the applicable federal limitations period. *Thayer,* 780 F.Supp. at 748.

In 1984, Judge Joseph Young of this district applied this two part rule in *FSLIC v. Williams,* 599 F.Supp. 1184 (D.Md.1984). The dispute in that case arose after plaintiff FSLIC succeeded to all claims against the former officers and directors of a federally insured savings and loan that became insolvent. Among the defendants named in the suit was Loella Fisher, an officer of the institution who was allegedly responsible for violations of FHLBB regulations, the underreporting of problem loans to FHLBB, and a great number of other improprieties. Defendant moved for summary judgment on limitation grounds, claiming that one of FSLIC's claims was time-barred because the plaintiff knew of the Ms. Fisher's alleged misconduct for over three years before the suit was filed.

In *Williams,* Judge Young employed the two step limitations analysis for claims assigned to a federal entity. 599 F.Supp. at 1192. In his discussion of the first prong of the test, the court properly focused on the three year Maryland statute of limitations set forth in Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1989). The court also recognized that under Maryland law, a cause of action

does not accrue until the claimant knew or reasonably should have known of the existence of the claim. *Id.,* citing *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981). The court concluded, however, that these basic principles of state law did not automatically operate to bar a claim that accrued after the limitations period expired because under some circumstances, the doctrine of equitable tolling will postpone the date that the statute of limitations commences. *Id.* at 1193. Under the approach announced in *Williams,* "the causes of action against former directors and officers of an institution do not accrue while the culpable group of defendants retain control of the institution and the limitations statute does not begin to run against an officer who resigns if the remaining culpable directors and officers retain control after the officer's resignation." *Id.* (citations omitted). The court reasoned that only the addition of a disinterested majority of directors can remove the taint of the wrongdoers and cease the tolling of the statute. *Id.* at 1193–94, citing *FDIC v. Bird,* 516 F.Supp. 647 (D.P.R.1981); *Allen v. Wilkerson,* 396 S.W.2d 493 (Tex.Civ.App.1965).

The rule applied in *Williams,* which is known as "adverse domination," is clearly germane to the resolution of the instant dispute. Although *Williams* is not binding on this Court, Judge Young's cogent reasoning is highly persuasive. The rule of adverse domination strikes the proper balance between the inherent rigidity of statutes of limitations and the practical realities of a board of directors dominated by a majority of culpable defendants. It would be absurd for the Court to allow the viability of plaintiff's claim to hinge on the action or inaction of the very individuals who are charged with the wrongdoing in this lawsuit. *See Williams,* 599 F.Supp. at 1193 n. 12; *FDIC v. Bird, supra,* at 651.

When applied to the facts of this dispute, the adverse domination theory articulated by this court in *Williams* clearly compels the denial of defendants' motion. In the complaint, RTC alleged that the defendants controlled the affairs of Baltimore Federal until June, 1988. Under principles of equitable tolling, the fact of adverse domination tolled

the three year Maryland statute of limitations until June, 1988.[5] The limitations period had not expired less than one year later when FSLIC acquired the assets of Baltimore Federal. Consequently, all claims that the institution could have asserted against its officers and directors were viable on February 7, 1989, the time of assignment to FSLIC.[6] The Court cannot dismiss plaintiff's claims against defendants on limitations grounds, nor can it grant summary judgment, because none of plaintiffs claims were barred at the time of conservatorship.

Defendants urge the Court not to follow *Williams* because they argue that Judge Young failed to cite or consider the relevant Maryland law on the issue of adverse domination. The analysis of state law in *Williams* was sparse because no Maryland court had, at the time of the decision, considered whether adverse domination was available to toll the state statute of limitations.[7] Judge Young did, however, discuss the three year Maryland statute of limitations and *Poffenberger v. Risser, supra*, the seminal Maryland decision on the discovery rule. Although it only predicted Maryland law on the issue of adverse domination,[8] *Williams* nevertheless deserves serious consideration and deference because it thoroughly analyzed the identical issue posed by this case. Likewise,

as a significant decision of this court,[9] *Williams* cannot, and should not, be lightly disregarded.[10] The Court must, therefore, reject defendants' conclusion that the omission of any language in *Williams* manifesting the court's attempt to forecast Maryland law on the issue of equitable tolling robs the opinion of all persuasive weight.

It is not necessary to consider the applicability of the other forms of the adverse domination doctrine discussed by defendants in view of the Court's reliance on the "disinterested majority" approach of *Williams*.[11] Because the statute of limitations does not bar any of plaintiff's claims, defendants Mullan and Stautberg's motion to dismiss or for summary judgment must be denied. For the same reasons, defendants' motion for certification of the statute of limitations issue will also be denied.

## IV. *MOTION OF PLAINTIFF TO STRIKE AFFIRMATIVE DEFENSES*

RTC has moved to strike the affirmative defenses plead by defendants Thomas J. Reynolds, Robert E. Hecht, and Leonard W. Dayton. Reynolds and Hecht asserted the defense of contributory negligence or regulatory negligence by FHLBB, FSLIC, or the

5. It is irrelevant that defendants Mullan and Stautberg resigned from the Board of Directors of Baltimore Federal in 1984 and 1985, respectively, because their codefendants retained control until 1988. *See Williams*, 599 F.Supp. at 1193.

6. This suit, which was filed on February 6, 1992, also complies with the applicable federal statute of limitations. Under FIRREA, a federal entity has three years from the date it is appointed conservator of a financial institution or the date of accrual of the claim, whichever is later, to file suit on a tort claim. 12 U.S.C. § 1821(d)(14). A federal entity has six years from the relevant date to file suit on a contract claim. 12 U.S.C. § 1821(d)(14). All parties agree that if the claims were viable at the time of conservatorship, this action was timely.

7. To date, there is no Maryland law on the subject of adverse domination.

8. A decision of this court on an issue of state law for which there is no controlling precedent in the

Maryland Court of Appeals should try to forecast Maryland law. *See Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1981).

9. Several other jurisdictions have followed Judge Young's reasoning in *Williams* on the adverse domination issue. *See FDIC v. Howse*, 736 F.Supp. 1437, 1441–42 (S.D.Tex.1990); *FSLIC v. Burdette*, 696 F.Supp. 1196, 1200 (E.D.Tenn. 1988); *FDIC v. Carlson*, 698 F.Supp. 178, 180 (D.Minn.1988); *FDIC v. Hudson*, 673 F.Supp. 1039, 1041 (D.Kan.1987).

10. "Stare decisis principles ... dictate that like cases should be decided alike by courts in a single jurisdiction." Friedenthal, Kane & Miller, *Civil Procedure*, § 14.1 at 609 (1985).

11. Defendants Mullan and Stautberg have called the Court's attention to *White v. FDIC*, 122 F.2d 770 (4th Cir.1941), *reh'g denied*, 124 F.2d 429, *cert. denied*, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942). The Court finds that the facts of *White* render its holding wholly inapplicable to this dispute.

federal government.[12] Reynolds also plead laches, and both Reynolds and Dayton plead estoppel. Hecht advanced the affirmative defense of lack of proximate cause.

Under Fed.R.Civ.P. 12(f), a court may strike any defense that is insufficient, redundant, immaterial, impertinent, or scandalous. This Court has recognized that although it is a drastic remedy, a motion to strike an insufficient defense should be granted if the "defense would confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action ..." *United States v. Fairchild Industries, Inc.,* 766 F.Supp. 405, 408 (D.Md.1991) (Ramsey, J.), citing Wright & Miller, 5A *Federal Practice and Procedure: Civil 2d* § 1381 (1990). In cases brought by federal banking regulators, motions to strike affirmative defenses are common. *See FDIC v. Isham,* 782 F.Supp. 524 (D.Colo.1992); *FSLIC v. Burdette,* 718 F.Supp. 649, 663 (E.D.Tenn.1989).

■ It is well established that federal regulators owe no duty to the officers and directors of federally insured financial institutions. *FSLIC v. Roy,* 1988 WL 96570, 1988 U.S. Dist. LEXIS 6840 (D.Md.1988) (Motz, J.); *Williams, supra; Isham, supra.* Courts overwhelmingly agree that

> FSLIC has been created for the purpose of preserving the integrity of the national banking system by providing an insurance fund to cover the deposits of failed and failing institutions. FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster. Self-evidently, it is the public which is the intended beneficiary of FSLIC ...

*Roy,* 1988 WL 96570 at 1, 1988 U.S. Dist. LEXIS 6840 at 4. *See also Burdette,* 718 F.Supp. at 663. In this context, it is clear that the affirmative defenses of contributory negligence and regulatory negligence must fail because alleged misconduct by RTC can-

not vitiate the defendants' liability. The defendants' culpability for losses resulting from the six loans at issue is wholly unrelated to any activities of the plaintiff or its predecessor.

■ It is equally clear that the other affirmative defenses specified in plaintiff's motion must be stricken. The policies that underlie the unavailability of affirmative defenses based on the conduct of federal regulators apply with the same force to the defense of estoppel. *See Isham,* 782 F.Supp. at 532. Dayton and Reynolds have no basis for their estoppel defense because "the FDIC's own conduct cannot be used to defeat or reduce a recovery to the insurance fund because the FDIC does not act to benefit bank officers and directors." *Id.* Likewise, Reynolds cannot use laches as a defense because it is not available in actions brought by the FDIC in its corporate capacity. *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986) (citations omitted); *see also FDIC v. Baker,* 739 F.Supp. 1401, 1407 (C.D.Cal. 1990); *Isham,* 782 F.Supp. at 532. Finally, the Court must also strike the portion of Hecht's defense of lack of causation that relies on the conduct of regulatory authorities or on conditions, like an economic downturn, which took effect after the loans at issue were made. On this point, *Roy, supra,* is again instructive. Under similar circumstances, Judge Motz struck the proximate cause defense to the extent it relied on the conduct of the regulators or on any extrinsic factors that are not relevant to the basic fact that the defendants made the loans at issue. *Roy,* Civil Action No. JFM–87–1227, 1990 WL 488463 (D.Md.1990). The court reasoned that even if conditions arising after the loans were made contributed in some way to the size of the loss, the basic fact that the defendants made the loans remains.[13] The Court will apply the principles articulated in *Roy* and strike the affirmative defense of lack of causation to the extent that the defendant relies on the conduct of regulatory au-

---

12. In its motion to dismiss, RTC states that defendant James L. Fisher has raised a similar defense in his motion to dismiss, although he does not label it as such.

13. The Court agrees with the caveat to this rule expressed in *Roy* that the general economic con-

ditions which existed at the time the loans were made and which contributed to the adoption of less conservative lending policies by institutions like Baltimore Federal may be relevant as background information.

thorities or on conditions, like an economic downturn, which took effect after the loans at issue were made.

## V. MOTIONS OF DEFENDANTS MUL-LAN, STAUTBERG, WOODS, IRE-TON, AND FISHER TO DISMISS CLAIMS FOR NEGLIGENCE AND BREACH OF FIDUCIARY DUTY

Defendants Mullan, Stautberg, Woods, Ireton and Fisher have moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss RTC's claims of negligence and breach of fiduciary duty. Defendants argue that the ordinary negligence counts fail to state a claim because under both FIRREA and Maryland law, directors and officers are only liable for gross negligence. Further, the defendants assert that all claims of breach of fiduciary duty must also be dismissed because the complaint does not allege any facts demonstrating a breach of the duty of loyalty.

### A. RTC's Negligence Claim

■ Section 1821(k) of FIRREA governs the liability of officers and directors of federally insured savings and loans to the RTC. This law provides:

> A director or officer of an insured depository institution may be held personally liable for monetary damages ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable state law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k). Although the language of this section is somewhat unclear, most courts agree that the applicable duty of care is defined by state law. *See, e.g., FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992) (en banc). Under Maryland law, an officer or director of a corporation is only subject to

liability for gross negligence. *Devereux v. Berger,* 264 Md. 20, 284 A.2d 605 (1971); *Parish v. Maryland and Virginia Milk Producers Ass'n,* 250 Md. 24, 242 A.2d 512 (1968), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). In delineating the standard of care, the Maryland Court of Appeals has stated that "[t]he conduct of the corporation's affairs [is] placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are ordinarily not liable." *Parish,* 250 Md. at 74, 242 A.2d 512.

■ RTC nevertheless argues that FIR-REA does not preclude claims against officers and directors for ordinary negligence because § 1821 expressly preserves the rights of RTC existing under "other applicable law."[14] RTC argues that federal common law in effect at the time FIRREA was enacted holds officers and directors of federally regulated financial institutions to a more rigorous standard of care than officers and directors of general corporations. *Gadd v. Pearson,* 351 F.Supp. 895, 903 (M.D.Fla. 1972). This body of federal law, according to RTC, subjects officers and directors of banking institutions to liability for ordinary negligence. *See Atherton v. Anderson,* 99 F.2d 883, 888 (6th Cir.1938). Consequently, RTC asserts that its negligence claim should not be dismissed because the savings clause validates the ordinary negligence standard.

The plain language of § 1821(k) and the principles of Maryland law it incorporates clearly establish that liability for defendants must be predicated on gross negligence. The Court cannot, as RTC implores, ignore a clear statutory mandate from Congress and apply a standard of care fashioned under federal common law before FIRREA was enacted.[15] In addition to undermining FIR-REA, the use of an ordinary negligence standard of care on these facts would contravene the basic notion that federal common law applies only if there is no governing federal statute. *Ridenour v. Andrews Federal Cred-*

---

**14.** The last sentence of 12 U.S.C. § 1821(k), which contains the "other applicable law" language, is referred to as the savings clause.

**15.** Judge Young's opinion in *Williams, supra,* is not as persuasive on the standard of care issue as it was on the statute of limitations issue because FIRREA was not in effect when *Williams* was decided.

*it Union,* 897 F.2d 715, 722 (4th Cir.1990). Defendant's case for dismissal is further strengthened by the fact that both § 1821(k) and settled Maryland law employ the gross negligence standard.[16] The requirement in the statute that courts interpret the gross negligence standard "as such terms are defined and determined under applicable state law" is specific and unequivocal; the Maryland definition of gross negligence must govern this action. Plaintiff's ordinary negligence counts must be dismissed because under § 1821(k), the liability of officers and directors is limited to gross negligence as defined by Maryland law.

### B. *RTC's Breach of Fiduciary Duty Claim*

 Defendants have also moved to dismiss the counts charging them with breach of their fiduciary duties. Specifically, defendants argue that RTC has failed to state a claim because it has not alleged any facts which demonstrate that the defendants breached their duty of loyalty to Baltimore Federal by any form of self-dealing or self-interested conduct. Defendants recognize that a fiduciary duty imposes two distinct obligations on officers and directors: the duty of care and the duty of loyalty. Nevertheless, they tacitly suggest that officers and directors can breach their fiduciary duty only by breaching *both* constituent duties. None of the defendants, however, are able to cite any authority to support this contention. In general, the body of case law on this issue suggests a greater willingness by courts to find liability where both duties have been breached. It is the opinion of the Court that a breach of fiduciary duty can be predicated on *either* a breach of the duty of care or the duty of loyalty, *or* on the breach of both duties. RTC has stated a claim of breach of fiduciary duties by alleging only that the defendants breached their duties of care.

Defendants Mullan, Stautberg, and Fisher have also asserted the business judgment

rule as a basis for dismissing some or all of RTC's claims. With only the allegations of the complaint before the Court, it would be premature to determine the sufficiency of the business judgment defense at this juncture. *See FSLIC v. Musacchio,* 695 F.Supp. 1053, 1064 (N.D.Cal.1988) ("A ruling on the applicability of the business judgment rule is peculiarly a question of fact, wholly inappropriate for consideration on a motion to dismiss."); *FSLIC v. Williams,* 599 F.Supp. 1184, 1213 (D.Md.1984) (summary judgment was not appropriate because "the facts concerning the defendant's knowledge and conduct, and the circumstances in which they existed, as well as any determinations of how they relate to the legal standard of corporate fiduciary responsibility are best left for resolution by the trier of fact at trial."). Defendants' motions to dismiss the breach of fiduciary duty claims must be denied.

## VI. *CONCLUSION AND ORDER*

Accordingly, it is this 27th day of July, 1992, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendants Thomas F. Mullan, Jr. and Gerald J. Stautberg's motion to dismiss the complaint or for summary judgment or in the alternative to certify the question of statute of limitations to the Maryland Court of Appeals BE, and hereby IS, DENIED; and

2. That the Resolution Trust Corporation's motion to strike affirmative defenses BE, and hereby IS, GRANTED; and

3. That defendants Mullan and Stautberg's motion to dismiss plaintiff's claims for negligence and breach of fiduciary duty BE, and hereby IS, GRANTED IN PART AND DENIED IN PART; and

4. That defendants Ward R. Woods and John F. Ireton's motion to dismiss pursuant

---

**16.** The debate among courts about whether FIRREA creates a uniform standard of care for all actions brought by RTC is irrelevant to this case because Maryland law subjects officers and directors to liability only for gross negligence. *See FDIC v. Swager,* 773 F.Supp. 1244 (D.Minn.1991) (Under § 1821(k), officers and directors of in-

sured depository institutions may be held liable only for gross negligence, regardless of the state standard of care); *FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992) (en banc) (RTC may maintain an action for ordinary negligence if permitted under state law).

to Fed.R.Civ.P. 12(b)(6) BE, and hereby IS, GRANTED IN PART AND DENIED IN PART; and

5. That defendant James L. Fisher's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) BE, and hereby IS, GRANTED IN PART AND DENIED IN PART; and

6. That Counts II, VI, X, XIV, XVIII, XXII of the Complaint BE, and hereby ARE, DISMISSED; and